## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF One Apple iPhone, bearing IMEI number 354832091345627, one Apple iPhone, bearing IMEI number 356560106926036, one Apple iPhone, bearing IMEI number 357261093409388, one Apple iPhone, bearing IMEI number 358609073972636, one Apple iPhone, bearing IMEI number 356740912847689, and one Apple MacBook, model number A2289, bearing serial number FVFCR1KLP3Y2 obtained by HSI and currently held at the HSI Columbus office storage location located at 675 Brooksedge Blvd. Westerville, OH 43081 | Case No. 2:23-mj-117 |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Bianca Ragone (Your Affiant), a Special Agent with Homeland Security Investigations (HSI) being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—six electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) of Homeland Security Investigations (HSI), assigned to the Office of the Assistant Special Agent in Charge, Columbus, Ohio since September 2019. During my tenure as a Special Agent, I have completed the Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training Program (HSISAT) at

the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. During CITP and HSISAT I have received training on fraudulent documents, fraudulent identification cards, and financial crimes as it relates to bank fraud. I am a federal law enforcement officer who is engaged in enforcing federal criminal laws, including 18 U.S.C. § 1028 and 18 U.S.C. § 1344 and I am authorized by law to request a search warrant.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agencies and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have not withheld any evidence or information which would negate probable cause.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      The property to be searched is:

a.   One Apple iPhone, bearing IMEI number 354832091345627, (hereinafter referred to as **SUBJECT DEVICE 1**)

b.   One Apple iPhone, bearing IMEI number 356560106926036, (hereinafter referred to as **SUBJECT DEVICE 2**)

c.   One Apple iPhone, bearing IMEI number 357261093409388, (hereinafter referred to as **SUBJECT DEVICE 3**)

d.   One Apple iPhone, bearing IMEI number 358609073972636, (hereinafter referred to as **SUBJECT DEVICE 4**)

2

    e.    One Apple iPhone, bearing IMEI number 356740912847689, (hereinafter referred to as **SUBJECT DEVICE 5**)

    f.    One Apple MacBook, model number A2289, bearing serial number FVFCR1KLP3Y2, (hereinafter referred to as **SUBJECT DEVICE 6**)

(collectively, the **SUBJECT DEVICES**) which are currently in the custody at the HSI Columbus office storage location located at 675 Brooksedge Blvd. Westerville, OH 43081.

5.    The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES**, wherever they may be found, for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

6.    On January 18, 2023, Harrison County Sheriff's Office (HCSO) conducted a traffic stop of a rental vehicle bearing Illinois license plate ███████ on a Dodge Durango. The driver, ████████████████ ███ (███ had an active warrant out of Ashland County, OH for failure to appear on State of Ohio charges for possession of marijuana. The passenger was identified as █████ ██ (███ Subsequent to the traffic stop, the vehicle was searched due to the odor of burnt marijuana emanating from the vehicle. A marijuana grinder with marijuana residue inside along with numerous fraudulent identification documents (IDs), checks with various names on them, ink cartridges, and the **SUBJECT DEVICES** were found. The fraudulent IDs depicted ██ and ██████ picture with various names and addresses. Both individuals were arrested on numerous State of Ohio charges and the vehicle was towed to HCSO.

3

7.      On January 19, 2023, HCSO obtained a search warrant for the rental vehicle. Numerous items were seized from the vehicle, including:

a.    36 fraudulent IDs (24 with ██████ picture on the IDs and 11 with ██████ picture on the IDs; 30 of the IDs purported to be IDs from Ohio, 5 from Massachusetts, and one from Pennsylvania);

b.    17 checks with different people's names and addresses on them; several matching the personal identifiers on the fraudulent IDs;

c.    All **SUBJECT DEVICES;**

d.    73 ink cartridges;

8.      On January 19, 2023, The Federal Bureau of Investigation (FBI) was called to fingerprint both individuals to verify their identity after they had given HCSO various identities. ██████ fingerprints alerted the FBI Special Agent (SA) to him having an immigration record, specifically an I485 which means his status was adjusted regarding his lawful permanent residency in the United States Your affiant was called that same day to help verify ██████ legal status in the United States. Your affiant determined ██████ was a lawful permanent resident (LPR) from Angola and ██ was an United States citizen. HCSO requested HSI's assistance investigating the case.

9.      On January 20, 2023, your affiant met with HCSO Detective Todd Smith (Det. Smith) to review the case and interview ██ and ██████ Det. Smith informed your affiant that sometime that same day ██████ tried to flush his LPR card down the toilet in the HCSO jail.

4

Another inmate used the bathroom after him, found the card in the toilet, retrieved it, and turned it in to a Corrections Officer.

10. Investigation revealed there were three E-ZPass in the windshield of the rental vehicle. Two were for Ohio (OH) and one was for Pennsylvania (PA). Rental companies usually do not provide E-ZPass in rentals, but when they do three would not be provided. The vehicle was rented by ████████ from Columbus, OH on December 9, 2023, and was due back December 31, 2023.

11. Other items in the car included a bill from Peco addressed to ████ at ████████ ████████████ dated September 28, 2022, showed an outstanding balance for the electric/gas of $1,480.90. Another bill addressed to ████ at his PA residence was from Torres Credit Services in reference to the above-mentioned bill owed to Peco. This bill from the debt collector showed the outstanding balance was $1,878.55. Another bill from Hertz rental addressed to ████ showed that a 2022 Chrysler Pacifica, bearing Ohio license plate ████ was rented on September 13, 2022, in Columbus, OH and was due back on October 13, 2022, in Philadelphia, PA. The statement had a final notice stamp on it saying if the account was not settled it will be turned over to collections. The bill was forced charged on two different cards on October 25, 2022, in the total amount of $8,088.23.

12. On January 20, 2023, your affiant and Det. Smith interviewed ██ at the HCSO jail. ██ verified his full name and date of birth as ██████████ and ████ were ████████ stated he and ████ had been visiting ████████ in Canal Winchester, OH and were driving from Canal Winchester, OH to ████ place near Philadelphia, PA when they were stopped.

5

13. ███ stated one of their friends, ████, rented the vehicle they were stopped in. He did not know ████ last name, but he knew he was about 21 years old and lived close to Columbus. The car was rented about a month and a half prior to the traffic stop and the return date kept getting extended by himself and ████ ████ paid for the rental vehicle and ████ was going to give him money when they were done with it.

14. ███ stated he sometimes worked for his aunt at her phone shop in Reading, PA. Other than that, he does not work. ███ stated that ███ sometimes worked for Door Dash in Columbus and Pennsylvania, but other than that he also does not work. He stated it was just fake IDs, there was not anything more to it. No one introduced the idea to him, he and ███ just "did it". He said they both had their parts in it. ███ said he was only responsible for the IDs with his face on them. His part was to provide the names and identifiers on the IDs. He said him and ███ had 50/50 responsibility in the operation but would not say what ███ was responsible for.

15. ███ stated he just liked the thrill of making and having fake IDs and there was not a sole purpose for doing so. He just wanted to be in possession of fake IDs for no real reason. He would not identify who the information was given to or who else was part of the operation. He stated he did not know anything about checks in the vehicle.

16. ███ claimed the only things that belonged to him in the vehicle were a small black suitcase with wheels, "probably a bag", the IDs with his face on them, **SUBJECT DEVICE 2**, and **SUBJECT DEVICE 6**. He stated he did not have a driver's license and that's why he presented his U.S. Passport as identification to HCSO. He had an identification card out

6

of PA but lost it and never got a new one. He believed he had approximately 25-30 fake IDs in the car with his face on them.

17.     On the same day, your affiant and Det. Smith interviewed ████ regarding the traffic stop on January 18, 2023. ████ invoked his right to speak with an attorney and did not answer any questions.

18.     On that same day, ████ cellmates told a Corrections Officer working at HCSO jail that ████ told them **SUBJECT DEVICE 2** and **SUBJECT DEVICE 6** in the vehicle had information on it for making the fraudulent IDs. ████ also told the cellmates there was a printer they used for making fraudulent IDs at ████ residence at, ████████████████

19.     Based upon the above information, your affiant believes that there is probable cause to believe that all **SUBJECT DEVICES** contains additional evidence of the creation, possession, and possible distribution of fraudulent identification documents and bank fraud.

## TECHNICAL TERMS

20.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

7

from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.

8

Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs

9

usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.    Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.    Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.    IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of

10

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).
Every computer attached to the Internet computer must be assigned an IP address
so that Internet traffic sent from and directed to that computer may be directed
properly from its source to its destination. Most Internet service providers control
a range of IP addresses. Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

i.   Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other. Due to the structure of the Internet,
connections between devices on the Internet often cross state and international
borders, even when the devices communicating with each other are in the same
state.

21.   Based on my training, experience, and research, and from consulting the
manufacturer's advertisements and product technical specifications available online at
http://support.apple.com I know that the **SUBJECT DEVICES 1-5** described in Attachment A
have capabilities that allow it to serve as a digital storage device, world phone, digital camera,
media player, mail attachment support, has wifi/cellular and internet access, and **SUBJECT
DEVICE 6** described in Attachment A has capabilities that allow it to serve as a digital storage
device, digital camera, media player, mail attachment support, and has internet access. In my
training and experience, examining data stored on devices of this type can uncover, among other
things, evidence that reveals or suggests who possessed or used the device.

11

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

23.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or
        remnants of such files can be recovered months or even years after they have been
        downloaded onto a storage medium, deleted, or viewed via the Internet.
        Electronic files downloaded to a storage medium can be stored for years at little
        or no cost.  Even when files have been deleted, they can be recovered months or
        years later using forensic tools.  This is so because when a person "deletes" a file
        on a computer, the data contained in the file does not actually disappear; rather,
        that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or
        slack space—that is, in space on the storage medium that is not currently being
        used by an active file—for long periods of time before they are overwritten.  In
        addition, a computer's operating system may also keep a record of deleted data in
        a "swap" or "recovery" file.

12

    c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

    d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

24.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers,

13

e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A, wherever they may be found, to seek the items described in Attachment B.

## REQUEST FOR SEALING

28. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

15

investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Bianca Ragone*

Bianca Ragone
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on February 24, 2023:

UNITED STATES MAGISTRATE JUDGE
CHELSEY M. VASCURA

16

## **ATTACHMENT A**

1.      The property to be searched is:

    a.    One Apple iPhone, bearing IMEI number 354832091345627, (hereinafter referred to as **SUBJECT DEVICE 1**)

    b.    One Apple iPhone, bearing IMEI number 356560106926036, (hereinafter referred to as **SUBJECT DEVICE 2**)

    c.    One Apple iPhone, bearing IMEI number 357261093409388, (hereinafter referred to as **SUBJECT DEVICE 3**)

    d.    One Apple iPhone, bearing IMEI number 358609073972636, (hereinafter referred to as **SUBJECT DEVICE 4**)

    e.    One Apple iPhone, bearing IMEI number 356740912847689, (hereinafter referred to as **SUBJECT DEVICE 5**)

    f.    One Apple MacBook, model number A2289, bearing serial number FVFCR1KLP3Y2, (hereinafter referred to as **SUBJECT DEVICE 6**)

(collectively, the **SUBJECT DEVICES**) which are currently in the custody at the HSI Columbus office storage location located at 675 Brooksedge Blvd. Westerville, OH 43081.

2.      This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the **SUBJECT DEVICES** described in Attachment A that relate to violations of 18 U.S.C. § 1028(a)(1) and 18 U.S.C. § 1028(a)(3) – fraud as it relates to identification documents and authentication features and 18 U.S.C. § 1344 – bank fraud and involve ██████████████ █████ and █████ █████ including:

2.      All information that constitutes fruits, contraband, evidence, and instrumentalities of violation of the Target Offenses involving the user(s) of the **SUBJECT DEVICES**.

3.      Evidence of user attribution showing who used, owned, or controlled the **SUBJECT DEVICES** described in Attachment A;

4.      All email (including drafts), text messages, SMS, MMS, iMessages, communications (including content) regarding, but not limited to:

      a.   Financial Accounts

      b.   Safe deposit boxes

      c.   Identification documents to include fraudulent identification documents

5.      Any and all correspondence, records, documents, statements, cancelled checks, wire transfers, sales receipts, invoices, bills, checkbook registers, financial documents, or other material of any kind, relating to any bank accounts, investments accounts, financial accounts, loans, personal identifying information, and business activity. This includes, but is not limited to, correspondence, records, documents, statements, cancelled checks, checkbook registers, and other material of any kind relating or concerning ██████████████████ ███████ ████████ ██████ or any of their known aliases.

6.      All accounting, book keeping and financial records relating to receipts and expenditures including bank accounts, bank statements, credit card statements, records of accounts, records of income, journals, ledgers, financial statements, balance sheets, trial balances, statements of profits and losses, accounts and notes receivable, accounts and notes payable, check registers and canceled checks, cashier checks, wire transfer confirmations, federal, state, and local income tax returns including all schedules and attachments for drafts and filed returns, work papers, notes and memoranda, all tax records including tax preparation files, and documents relating to all other governmental filings or public statements.

7.      Any and all paycheck stubs, receipts, K-1 reports, or other documents of any kind relating to any income earned, and/or expenses accrued.

8.      Any and all identity documents and forms of any kind to include fraudulent ones, including U.S. passports, VISAs and drivers licenses as well as foreign citizenship documents and forms including passports, VISAs, and drivers' licenses.

9.      All documents relating to any and all transactions involving the proceeds of financial transactions, including, but not limited to, purchases and/or acquisitions of real and personal property including real estate homes, commercial buildings, aircraft, vehicles, jewelry, stocks, bonds, mutual funds, precious stones and metals, and any and all other articles of significant intrinsic value.

10.     All calendars, appointment books, diaries, planners and contact lists or address books.

2

11.     Any and all contracts, agreements, memoranda of understanding, billing statements, invoices, loan statements, receipts, marketing material, or written material of any kind indicating the purchase of goods and/or services.

12.     Records and information relating to unlawfully obtaining, using or identifying information (PII);

13.     Records and information constituting or relating to identification documents, including driver's licenses, social security cards, photo identification cards, and any device or image used in the fabrication of any identification document;

14.     All telephone account records, to include without limitation account information, telephone numbers, bills, statements, transaction history/toll logs, and payments information.

15.     All proceeds of the fraud, including any crypto-currency (in excess of $100 dollars) or foreign currency worth in excess of $100 dollars;

16.     Records and information relating to travel (domestic and international), including but not limited to airline tickets, car rental agreements, commercial tickets, passports, and visas;

17.     Records and information concerning indicia of use, ownership, possession, or control of the device including without limitation, IP logs, utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys;

18.     Keys, storage combinations, passwords and paperwork which indicate any other storage containers or facilities that could contain evidence of the scheme to defraud.

3

19.     Records, letters, correspondence, chat logs, instant messages, faxes, and log files, and any and all computer storage media, which concerns or relates to:

      a.   Correspondence, communication, or agreements related to the above scheme.

      b.   Any and all passwords or commands that control access to any computer, files or data and,

      c.   Any and all files, log files, data files and records relating to the use of internet service providers for purposes of committing the criminal offenses listed above;

20.     Computer software, meaning any and all information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software such as operating systems software, applications software, utility programs, compliers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

21.     Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items, system documentation, and software and instruction manuals.

22.     Computer passwords and data security devices, meaning any devices, programs, or data, whether in the nature of hardware or software, that can be used or designed to be used to restrict access to, or to facilitate concealment of, or destruction of any computer hardware,

4

computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form, and any evidence eliminator or data wiping software.

23.     Browsing history, internet search history, cookies, bookmarked, favorite web pages, email accounts, applications, social media accounts, photographs, videos, mms/SMS/iMessages/text messages, chat logs, documents, and any other communication related to the criminal offense;

24.     Recorded telephone messages or conversations related to the criminal offenses listed above;

25.     Immigration documents;

26.     Evidence indicating the device owner's state of mind as it related to the crime under investigation;

27.     All location history of the user of the device;

28.     All credit card and other financial information including but not limited to bills and payment records;

29.     All evidence of the times the device were used;

5

30.     All passwords and encryption keys, and other access information that may be necessary to access the device and other associated accounts;

31.     The identity of the person(s) who communicated with the device about matters relating to the above-mentioned violations, including records that help reveal their whereabouts.

32.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

33.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6